**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**JIMMY DALE HUNSUCKER, JR.**                                                                 **PLAINTIFF**

**V.**                                             **CASE NO. 3:10-CV-008**

**TIPPAH COUNTY, MISSISSIPPI, et al.**                                      **DEFENDANTS**

## ORDER

This cause comes before the court on Defendant Brandon Vance's motion [125] for summary judgment based on qualified immunity. The plaintiff has responded in opposition. Having considered the motion and submissions of the parties, the court is prepared to rule.

On June 9, 2007, Plaintiff Jimmy Dale Hunsucker was driving his vehicle when Tippah County Sheriff's Deputy William Rogers stopped him. Hunsucker's friend, John Jenkins was a passenger in the vehicle. Deputy Rogers arrested Hunsucker and Jenkins and transported them to Tippah County Jail.

Hunsucker alleges that once they were inside the jail, Deputy Rogers instructed him to blow into a breathalyzer. According to Hunsucker, the other officers present were Tippah County Sheriff's Deputy Jeffery Rogers and Ripley Police Department Officers Ramone Rengel, Ken Walker, and Karl Gaillard. Hunsucker alleges that when he refused to blow into the breathalyzer, the officers began pushing, hitting, and choking him. Thereafter, Deputy William Rogers requested and received permission from then-Sheriff Brandon Vance, who was out of town, to place Hunsucker in the isolation room. Hunsucker claims that after he was taken to the room, Deputies William and Jeffery Rogers repeatedly shot him with Taser guns, causing him to lose control of his bowels. Hunsucker alleges that the officers then ordered him to remove his clothing and continued to "taser" him. He was later handcuffed to the wall and remained in the

isolation room for two days, naked and soiled.

After his release from jail on June 11, 2007, Hunsucker sought medical treatment and reported the incident to the Federal Bureau of Investigation ("FBI"). Prosecution ensued in the U.S. District Court for the Northern District of Mississippi. Deputies William and Jeffery Rogers pleaded guilty to misdemeanor charges and were sentenced by the court. Following the criminal case, Hunsucker initiated the instant lawsuit against Tippah County, William Rogers, Jeffery Rogers, Brandon Vance, and St. Paul Fire and Marine Insurance Company ("St. Paul").[1] The plaintiff seeks only declaratory relief from St. Paul, which is the liability insurer for Tippah County. As to the remaining defendants, he asserts claims for conspiracy as well as violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Brandon Vance is sued in his individual capacity as former Sheriff of Tippah County, whereas Deputies William and Jeffery Rogers are sued in their official and individual capacities. Since this lawsuit was filed pursuant to 42 U.S.C. §§ 1983 and 1988, the court has subject matter jurisdiction based on a federal question, 28 U.S.C. § 1331.

At this time, Defendant Brandon Vance seeks summary judgment, arguing that he is entitled to qualified immunity and thus, cannot be liable under § 1983. Vance maintains that he was out of town when the events giving rise to this lawsuit took place and that he did not instruct any deputy to harm the plaintiff. Vance further argues that the facts neither show him being personally involved in any constitutional deprivation nor a causal connection between his conduct and the alleged violation of the plaintiff's rights.

Hunsucker responds by arguing that although Vance was not present when the injuries occurred, he is nevertheless liable for implementing unconstitutional policies at the jail, violating

---

[1] Ken Walker, Ramone Rengel, Karl Gaillard, and City of Ripley, Mississippi were defendants in this case until being dismissed on October 25, 2010.

duties imposed by state law, and failing to supervise and train his deputies. Hunsucker additionally asserts that the isolation room is an unconstitutional condition of confinement for which Vance provided no written or oral guidelines.

Summary judgment should be granted when the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When evaluating a motion for summary judgment, the court must construe the facts and evidence in the light most favorable to the nonmoving party. *Ford, Bacon & Davis, LLC v. Travelers Ins. Co.,* 635 F.3d 734, 736 (5th Cir. 2011). If the party seeking summary judgment meets its burden, the nonmoving party must then "come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Under § 1983, a government employee acting "within the scope of [his or her] discretionary authority" is entitled to qualified immunity. *Cronen v. Texas Dept. Human Svcs.*, 977 F.2d 934, 939 (5th Cir. 1992). The doctrine of qualified immunity serves two purposes: "to hold public officials accountable when they exercise power irresponsibly and…to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). If a government employee pleads "qualified immunity," the court must enter a judgment in favor of the employee unless his or her conduct violates

"clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity is an affirmative defense; therefore, the defendant must "plead and establish his entitlement to [it]." *Cronen*, 977 F.2d at 939. To satisfy this burden, the defendant must prove that the alleged conduct "occurred while he was acting 'in his official capacity and within the scope of his discretionary authority.'" *Id*. (quoting *Garris v. Rowland*, 678 F.2d 1264, 1271 (5th Cir. 1982)). Once the requisite showing is made, the burden then shifts to the plaintiff to rebut the defendant's entitlement to immunity. *Cronen*, 977 F.2d at 939. To rebut a qualified immunity defense, the plaintiff must show a genuine issue of fact as to whether "the official's allegedly wrongful conduct violated clearly established law." *Sama v. Hannigan*, 669 F.3d 585, 591 (5th Cir. 2012) (quoting *Kovaic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010)).

Supervisors such as sheriffs cannot be held vicariously liable under § 1983 for the actions of their subordinates. *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir. 1987). However, a sheriff not personally involved in actions depriving a plaintiff of his constitutional rights will be liable under § 1983 if he implements an unconstitutional policy that causally results in the plaintiff's injury. *Id*. The sheriff will also be liable if: (1) he failed to train or supervise the deputies involved; (2) there is a causal connection between the sheriff's failure and the violation of the plaintiff's constitutional rights; and (3) the failure constituted "deliberate indifference" to the plaintiff's rights. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001) (citations omitted). To meet the deliberate indifference requirement, a plaintiff must show more than one instance of a lack of training and/ or supervision causing a constitutional rights violation. *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998).

Turning to the case at hand, Vance satisfies his burden of proving entitlement to qualified

immunity. He exercised his discretion as Tippah County Sheriff when he gave the deputies permission to put Hunsucker in the isolation room. Since Vance was not at the jail, his decision was based on the information given to him by his deputies regarding Hunsucker's behavior. The plaintiff does not argue that the decision to put him in the isolation room was unconstitutional; rather, the plaintiff asserts that the harm inflicted upon him by the deputies and the conditions of confinement violated his constitutional rights. Vance maintains that the acts of his deputies should not be imputed to him because he did not take part in or know about the incident until it was over. The defendant's lack of knowledge is confirmed by William Rogers, who testified during his deposition that Vance was not made aware of the alleged acts until after they ended. W. Rogers Dep. 111:14-24. Therefore, the court finds that Vance has met his burden of proving that he is qualifiedly immune from suit. The burden now shifts to the plaintiff.

Hunsucker argues in rebuttal that Vance is not entitled to qualified immunity because he implemented unconstitutional policies regarding taser usage and the isolation room. The plaintiff's argument, however, is inconsistent. To illustrate, Hunsucker first argues that Vance expressed his policy on Taser guns by hanging a sign[2] in the jail, which stated "if you resist, you will be tased." Then, the plaintiff argues that "Vance did not have a policy, written or oral, instructing his officers under what circumstances the taser should be used in the jail." Pl's. Mem. Br. Resp. to Mot. Summ. J. at 8. Likewise, the plaintiff asserts that "Vance's refusal to discipline" the deputies regarding the isolation room issue shows that the deputies were acting in compliance with his unconstitutional policy. *Id.* at 18. Yet, Hunsucker later argues that the defendant's effort to create a written policy for the isolation room "after the incident proves that there was no policy existing prior to the incident." *Id*. at 21.

---

[2] Vance testified during his deposition that he placed a sign in the jail which read "if you're resisting, you will be tased to stop resisting." Vance Dep. 52:2-3.

Although the plaintiff makes inconsistent arguments regarding this issue, at no point does he specify what these alleged policies entailed or what made them unconstitutional. If Vance implemented a policy, the court must determine whether that policy is unconstitutional and causally connected to the plaintiff's injuries. Alternatively, if there was no policy, this issue would be moot. The closest attempt Hunsucker makes to identify a policy is when he argues that the sign in the jail was Vance's policy on taser usage. Hunsucker appears to overlook the Tippah County Sheriff's Department Taser Use of Force Policy, which the deputies were required to comply with. Even if the wall sign was considered his policy, Vance testified in his deposition that deputies were required at all times to exercise their discretion based on the Taser Use of Force Policy. Vance Dep. 55:1-13. In addition, the wall sign is consistent with the Department's policy, which provides that tasers "should only be used against persons who are actively resisting or exhibiting active aggression…" Taser Use of Force Policy, IV(C)(1). Hunsucker does not allege that the Department's policy was unconstitutional, which in any event, is not considered Vance's policy. Further, the plaintiff has not established that Vance implemented an unconstitutional policy that resulted in the violation of his rights. As the plaintiff is unable to satisfy his burden, the unconstitutional policy argument fails.

Hunsucker next argues that Vance is not entitled to immunity because he failed to train or supervise his deputies. The plaintiff's burden under this theory is threefold: he must prove that (1) Vance failed to train or supervise the officers involved; (2) Vance's failure to train or supervise is causally related to the plaintiff's injuries; and (3) the failure amounts to a deliberate indifference to the plaintiff's constitutional rights.

The plaintiff claims that Vance "never instructed his jailers or deputies regarding constitutionally proper taser usage in the jail." Pl's. Mem. Br. Resp. to Mot. Summ. J. at 10.

However, according to the Department's policy, only officers who have completed the agency's certified training course are authorized to carry tasers. Taser Use of Force Policy, IV(A). Also, Vance testified during his deposition that his deputies were trained on the use of force for tasers. Dep. 25:24-26:3. At both William and Jeffrey Rogers' depositions, the plaintiff asked whether the officers believed based on their training and experience that they had complied with the Department's policy on taser usage. *See* W. Rogers Dep. 30:2-6; J. Rogers Dep. 26:14-19. Both answered affirmatively. *Id.* The plaintiff previously used the deputies' answers to support his argument that Vance implemented an unconstitutional policy at the jail. In doing so, Hunsucker argued that the deputies testified "that they were following Vance's, and the Jail's, policy when they tasered the Plaintiff." Pl's. Mem. Br. Resp. to Mot. Summ. J. at 11. Hunsucker uses this testimony when it advances one of his arguments, but disregards it when it negates another. It is contradictory for the plaintiff to elicit answers from the deputies based on their training and then represent to the court that the deputies lacked training. Considering that both deputies agreed that they received training on taser usage, the plaintiff's argument must fail.

In regards to the isolation room, Hunsucker asserts that "[a]lthough Vance claimed that the jailers were trained and certified regarding general jail procedures, no such information was ever produced." *Id*. at 17. The plaintiff bears the burden of proof on rebuttal. He cannot simply rely on his bare allegation and argue that the defendant did not submit proof of training the officers. Assuming that Hunsucker had proven Vance failed to train the officers, the plaintiff still cannot show that the failure constituted deliberate indifference and that it is causally related to the alleged constitutional violation. To establish deliberate indifference, Hunsucker must show a pattern of the lack of training causing constitutional rights violations. As it relates to the isolation room, the plaintiff only alleges one instance of a lack of training resulting in a violation

of constitutional rights—his own. One occurrence does not rise to the level of deliberate indifference. Further, Hunsucker has not shown that there is a causal connection between the lack of training and the violation of his constitutional rights. Therefore, the plaintiff's argument on this issue must fail also.

The court now turns to the issue of whether the defendant violated his duty under Mississippi law. The plaintiff asserts that under Miss. CODE ANN. § 19-25-69, a sheriff must "preserve the…premises and prisoners from mob violence, from any injuries or attacks by mobs or otherwise…[and] shall keep the...jail…in a clean and comfortable condition." The plaintiff appears to argue that Vance violated this statute by failing to preserve the premises from mob violence and by not keeping the isolation room in a clean and comfortable. This argument, however, is flawed. The deputies' actions do not constitute mob violence. Further, the plaintiff previously stipulated that he only asserts federal causes of action and makes no state law claims. Doc. 43. This claim should be dismissed.

Based on the foregoing analysis and applicable law, the plaintiff cannot establish a genuine fact issue regarding whether Vance's allegedly wrongful conduct violated clearly established law. The plaintiff is also unable to show that the defendant is liable under § 1983 for his deputies' actions. Therefore, the motion for summary judgment based on qualified immunity is well taken and should be GRANTED. The claims asserted against Brandon Vance in his individual capacity are hereby DISMISSED.

SO ORDERED, this the 20th day of April, 2012.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**